IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

WILLIAM H. DANFORTH,

                                    Plaintiff,

         vs.                                            Civil Action No.
                                                        6:02-CV-0488 (LEK/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                                    Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

LEGAL AID SOCIETY OF                      MARY M. WITHINGTON, ESQ.
NORTHEASTERN NY -
SARATOGA SPRINGS
10-12 Lake Avenue
Saratoga Springs, NY 12866

FOR DEFENDANT:

HON. GLENN T. SUDDABY                     WILLIAM H. PEASE, ESQ.
United States Attorney for the            Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL                 BARBARA L. SPIVAK, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                        KAREN G. FISZER, ESQ.
                                          Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff William Danforth, who has a documented history of suffering from a seizure disorder which has been well managed through treatment and medication, has commenced this action seeking judicial review of an administrative determination denying his request for disability insurance and supplemental security income ("SSI") benefits.  In support of his challenge to the agency's denial of benefits, Danforth contends that the finding that he is capable of performing his past relevant work, and therefore is not disabled, is both at odds with the findings of his treating physicians and inconsistent with his testimony concerning the limitations which he experiences as a result of his impairment.  Plaintiff seeks reversal of the Commissioner's determination and a remand of the matter to the agency with a directed finding of disability or, alternatively, for further consideration, particularly in light of newly developed evidence.

Based upon a careful and thorough review of the record, considered in light of plaintiff's arguments, I find the Commissioner's determination that plaintiff was not disabled during the relevant period resulted from the application of proper legal principles, and is supported by substantial

evidence.  I therefore recommend that defendants' motion for judgment on the pleadings be granted, and plaintiff's complaint be dismissed in its entirety.

I.   <u>BACKGROUND</u>

Plaintiff was born on September 27, 1955; at the time of administrative hearing in this matter, Danforth was forty-five years of age. Administrative Transcript at pp. 24, 83, 210.[1]  Plaintiff is divorced and lives alone.  AT 24.  Plaintiff is a high school graduate and possesses an Associates Degree in the field of Criminal Justice; while plaintiff is not able to recall exactly when that degree was conferred, he believes it was earned prior to an automobile accident, which occurred in 1985, *see* AT 37, though it was retrieved by his ex-wife after the accident.  AT 24, 102.

Plaintiff last worked regularly as a bartender; that position ended in October of 1999 upon the seasonal closure of the establishment, and plaintiff was not called back to work the following year based upon the failure of the establishment's business to support his position.  AT 26, 96. In the past, plaintiff has also worked as an identification checker/floor

_____

[1]      Portions of the administrative transcript, Dkt. No. 9, which was filed by the Commissioner with her answer, and a later filed supplemental transcript which is paginated as a continuation of the original administrative transcript, Dkt. No. 13, will be cited herein as "AT __."

person at a local nightclub; in the field of carpentry; as a groundskeeper at a hotel; in a paper mill, where he would feed rolls of paper into a machine; and as a tow truck operator.[2]  AT 28, 97, 105, 107-09.

Over the past several years plaintiff has received treatment for a seizure disorder attributed by him to head trauma suffered in a motorcycle accident which occurred in the mid-1980's, resulting in the onset of seizures some two years later.  *See* AT 116.  Efforts to treat plaintiff's seizure impairment intensified when in July of 1999, he was hospitalized after experiencing a seizure.  *See* AT 157-70.  Since that time, and for approximately three years prior to the hearing in this matter, plaintiff received treatment from Dr. Howard Silverberg, a physician with Adirondack Medical Associates LLC, located in Ft. Edward, New York, and, on referral from Dr. Silverberg, from Dr. Thomas I. Soule, M.D., a neurologist with offices in Glenns Falls, New York.  AT 27, 98, 113, 123, 127, 131.  During that period Danforth saw Dr. Silverberg at approximately four to six month intervals, and visited with Dr. Soule on a less regular basis, last having seen him in July or August of 2000.  AT 27,

---

[2]      While he is not engaged in any work on a regular basis, during the hearing plaintiff testified to performing various odd jobs including mowing lawns, raking leaves, and doing carpentry and plumbing work, and having earned approximately $400 over the preceding four months through those endeavors.  AT 24-25.

138-44.  Dr. Silverberg's treatment notes reflect that through the use of medication, including Dilantin, Depakote, and Neurontin, plaintiff's seizures have been largely controlled although he does reportedly suffer from occasional "break through" seizures, and additionally experiences auras when he feels the onset of a seizure, or believes one eminent.  AT 138-44, 193.  One such seizure occurred in January of 2000, causing an automobile accident and resulting in the revocation of plaintiff's driver's license.[3]  AT 29-30, 191-93.

Following the hearing in this matter, which was conducted on October 23, 2000, plaintiff was referred to Annette Payne, Ph.D with IMA Disability Services, for a psychiatric examination.  As a result of her examination, testing and review of plaintiff's medical history, Dr. Payne diagnosed Danforth as suffering from an amnesic disorder due to head trauma and a cognitive disorder not otherwise specified ("NOS"), and suggested the possibility of cognitive rehabilitation as well as vocational counseling.  AT 195-99.  Plaintiff's medical records were also reviewed by an agency consultant who completed a residual functional capacity ("RFC") assessment on January 18, 2000, finding no significant exertional

---

[3]     From review of the records it appears that this was the next seizure suffered by the plaintiff after the reported July, 1999 occurrence.

limitations resulting from his impairment.  AT 171-78.  The only finding of any significance in that consultative RFC assessment was that plaintiff should avoid all exposure to hazards, including machinery and heights, as a result of his seizure disorder.  AT 175.

In addition to his casual employment over the recent months, plaintiff testified that his daily activities include taking walks, meeting his friends regularly at a coffee shop, watching television, and using the computer to access the internet as well as to play video games.  AT 28-32.  Plaintiff is able to care for his cats as well as his mother's four dogs when she is in the area.  *Id.*  Plaintiff is also capable of mowing his lawn, cleaning, doing some cooking, and washing his clothes.  *Id.*

## II.   PROCEDURAL HISTORY

### A.   Proceedings Before The Agency

Plaintiff filed applications for disability insurance and SSI benefits under the Social Security Act, as amended, 42 U.S.C. § 401 *et seq.*, on or about December 10, 1999.  AT 83-85, 210-12.  Those applications were denied, both initially and upon reconsideration.  AT 53-55, 58-60, 213-18.

At plaintiff's request, a hearing was conducted on October 23, 2000 before Administrative Law Judge ("ALJ") Robert Wright in connection with

denial of plaintiff's applications for benefits.  Following that hearing, at

which plaintiff was represented by counsel, and after considering the

results of Dr. Payne's post-hearing psychiatric examination of the plaintiff,

ALJ Wright issued a determination, dated February 23, 2001, finding that

Danforth was not disabled during the relevant time period.  AT 11-16.

Applying the prevailing test for determining the issue of disability ALJ

Wright found in that decision first that plaintiff had not engaged in

substantial gainful activity during the relevant time period, and that the

insured status requirements of the Act had been met at all relevant times.

AT 12.  ALJ Wright next proceeded to find the existence of severe

impairments, in the form of a seizure disorder as well as an amnesic

cognitive order NOS, of sufficient severity to restrict Danforth's ability to

perform basic work activities, but concluded that those impairments did

not meet or equal any of the listings of presumptively disabling conditions

set forth in the applicable regulations, 20 C.F.R. Pt. 404, Subpt. P, App.1.

AT 12.

Proceeding to step four of the familiar, five part sequential analysis,

ALJ Wright concluded that plaintiff retains the RFC to perform the

exertional and nonexertional requirements of his past relevant work as a

floor person, and thus is not disabled.  AT 15-16.  In arriving at that

conclusion ALJ Wright rejected an opinion of plaintiff's treating physician,

Howard E. Silverberg, M.D., that plaintiff is unable to work, *see* AT 193, as

well as plaintiff's subjective testimony regarding his limitations.  AT 13-15.

ALJ Wright's decision became a final determination of the agency

when, on January 31, 2002, the Social Security Administration Appeals

Council denied plaintiff's request for review.  AT 2-3.

B.   This Action

Plaintiff commenced this action on April 4, 2002.  Dkt. No. 1.  Issue

was thereafter joined on August 12, 2002 with the Commissioner's filing of

an answer, accompanied by an administrative transcript of the

proceedings before the agency.  Dkt. Nos. 8, 9.  With the filing on

September 26, 2002 of plaintiff's brief, Dkt. No. 10, and that on behalf of

the Commissioner on November 7, 2002, Dkt. No. 12, the matter is now

ripe for determination, and has been referred to me for the issuance of a

report and recommendation, pursuant to 28 U.S.C. §§ 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(d).[4]  *See also* Fed. R. Civ.

---

[4]      This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on

P. 72(b).

III.    DISCUSSION

    A.    Scope of Review

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence,

_____

September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Secretary of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

> B.   Disability Determination: The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.] "  42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a

-12-

severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled". *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

> ### C.   The Evidence in this Case

> #### 1.   Treating Physician

In support of his request for judicial reversal of the agency's

determination, Danforth takes issue with the ALJ's rejection of opinions of

his treating physician.  Plaintiff alleges that the opinions of Drs. Silverberg

and Soule were overlooked when the ALJ concluded that he retains the

capacity to perform his past relevant work.

Ordinarily, the opinion of a treating physician is entitled to

considerable deference, provided that it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.[5]  *Veino*, 312 F.3d at 588;

---

[5]      The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other

*Barnett*, 13 F. Supp.2d at 316.  Such opinions are not controlling, however, if contrary to other substantial evidence in the record.  *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Id.*

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  See *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for

_____

substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions. *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp.2d at 316-17.

One of the opinions apparently relied upon by the plaintiff in support of this argument is included in a letter dated October 18, 2000 from Dr. Silverberg to plaintiff's counsel in which he opines, *inter alia*, that plaintiff experiences difficulties with side effects from the medications utilized to control his seizures and concludes that "the combination of the sedating side effects of his medications and his tendency to have breakthrough seizures despite treatment will make it *nearly impossible* for him to hold *most* full time jobs, particularly in the area of construction or restaurant work." AT 193 (emphasis added). Significantly, Dr. Silverberg does not opine that this combination makes it impossible for plaintiff to perform any work in his past areas of employment. Indeed, as defendant properly notes, such an opinion in and of itself would not be controlling since it addresses an ultimate issue reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Despite Dr. Silverberg's professed opinion in this regard, his treatment notes reflect that plaintiff's seizures have been well controlled

by the medications prescribed.  *E.g.*, 139, 140, 141, 144.  Conspicuously absent in Dr. Silverberg's notes are any indications of reported full seizures, as opposed to auras or "breakthrough seizures", past the January, 2000 incident.[6]  It is true that plaintiff experienced an earlier seizure on July 13, 1999, requiring his admission into the Glenns Falls Hospital.  *See* AT 157-70.  Interestingly, however, in his benefits application, plaintiff attributes the onset of his disability not to that date, but rather October 30, 1999, the date of his layoff as a result of the closing of the establishment where he was working.  *See* AT 83, 210.

In sum, careful review of the letter forming the principal basis for plaintiff's argument in this regard reflects that Dr. Silverberg does not opine unequivocally that Danforth lacks the capacity to work as a floor worker, and thus does not draw into question the ALJ's finding of no disability.  To the extent that it can be construed as doing so, Dr. Silverberg's opinion is not well supported, and the ALJ's rejection of it was therefore proper.

Plaintiff also relies upon opinions of Dr. Soule, as another of his treating physicians, to support his challenge of the ALJ's determination.  It

---

[6]       In his decision ALJ Wright notes, with regard to that seizure, that it "is the only reported seizure since the alleged date of onset of disability."  AT 13.

is unclear, however, to what opinions of Dr. Soule plaintiff alludes.  The

supplemental administrative transcript includes a letter dated May 21,

2001 from Dr. Soule regarding plaintiff's disability.  AT 238-39.  While that

letter makes reference to plaintiff's application for disability benefits, it

does not set forth any opinions that are inconsistent with the ALJ's

findings regarding plaintiff's limitations.[7]

Having carefully reviewed the record, and in particular reports of

Drs. Soule and Silverberg, I am unable to conclude that the ALJ's finding

of no disability improperly disregarded the opinions of those treating

sources.

## 2.   RFC Assessment

In arriving at his determination that plaintiff retains the capacity to

perform his past relevant work, ALJ Wright assessed his RFC.  The ALJ

concluded that Danforth retains the RFC to perform work which requires

standing and walking, without climbing, stooping, kneeling, crouching,

crawling or lifting, and additionally does not entail supervision of others or

working as a lead worker.  AT 12.  As additional RFC limitations, the ALJ

---

[7]      Significantly, Dr. Soule's letter reflects that plaintiff is desperate since he
"can't get a job", suggesting plaintiff's belief that he is capable of working and an effort
on his part to find employment consistent with that belief.

found that plaintiff is unable to use machines, tools, or equipment, or to write reports, complete forms, or use technical knowledge or skills, and additionally is limited to relatively simple work not requiring working at heights or machinery. *Id.*; *see* AT 15. Also implicit in the ALJ's RFC finding, though not specifically mentioned, is the lack of any limitation on lifting and carrying which would impede his ability to perform his past relevant work.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 §

-19-

200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

Attacking the ALJ's RFC finding, plaintiff maintains that it does not give appropriate credence to the opinions of Dr. Payne and her psychiatric evaluation which, he argues, suggests the existence of cognitive difficulties which are inconsistent with his ability to perform his past relevant work.  Although it is true that Dr. Payne's evaluation is equivocal, and does contain indication of some limitations, it does not suggest that plaintiff is incapable of performing his past relevant work.  Based upon her examination of the plaintiff, Dr. Payne discerned the existence of mild impairment in the areas of attention and concentration due to cognitive difficulties as well as mild impairment of recent and remote memory skills

attributable to the same difficulty.  AT 197.  In other areas plaintiff's insight and judgment were rated as fair; his orientation were described as alert and oriented in all three "spheres"; his sensorium "was clear"; his thought processes were described as "coherent and goal directed with no evidence of hallucination, delusion, or paranoia"; and his speech was found to be fluent and clear, with expressive and receptive language skills being adequate.  AT 196-97.  Dr. Payne noted plaintiff's ability to care for himself and participate in various daily activities and concluded that he

> could follow and understand simple directions and instructions.  He could perform simple rote tasks under supervision.  He could consistently perform simple tasks.  He could perform complex tasks with supervision.  He would have difficulties with attention and concentration and making appropriate decisions.  He would have difficulties learning new tasks.  He would have difficulties relating with others and dealing with the normal stressors of a competitive workplace.  His psychiatric difficulties are not limiting.  His cognitive difficulties are moderately to severely limiting.

AT 198.  These findings are not at all inconsistent with the conclusion that plaintiff is capable of performing as a floor identification checker.[8]

---

[8]  In his work history report, plaintiff described the floor person/identification checker position as requiring walking and standing for eight hours, with no lifting or carrying requirements, and stated that he was not required to supervise other personnel, hire and fire employees, or be a lead worker.  AT 107.

In short, Dr. Payne's evaluation does not undermine the conclusion that substantial evidence supports the ALJ's findings regarding plaintiff's RFC.

### 3.   Subjective Testimony

_____In support of his challenge to the ALJ's decision, plaintiff also points to his subjective testimony which, he maintains was improperly overlooked by the ALJ.  Specifically, plaintiff maintains that the finding of no disability ignores his testimony regarding his daily headache pains, chronic sleepiness, chronic fatigue and low to no energy to complete even simple tasks.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain.  *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily

would be relevant on the issue of credibility in any context, including the

claimant's credibility, his or her motivation, and the medical evidence in

the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL

59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. & Smith, M.J.) (citing

*Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an

independent judgment concerning the actual extent of pain suffered and

its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[9]  *Barnett*, 13 F. Supp.2d at 316; *see also*

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony

concerning the intensity, persistence or functional limitations associated

with his or her pain is not fully supported by clinical evidence, however,

then the ALJ must consider additional factors in order to assess that

testimony, including: 1) daily activities; 2) location, duration, frequency and

intensity of any symptoms; 3) precipitating and aggravating factors; 4)

---

[9]  In the Act, Congress has specified that a claimant will not be viewed as
disabled unless he or she supplies medical or other evidence establishing the
existence of a medical impairment which would reasonably be expected to produce the
pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

type, dosage, effectiveness and side effects of any medications taken; 5)

other treatment received; and 6) other measures taken to relieve

symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective

medical evidence, and any other factors deemed relevant, the ALJ may

accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d

at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such

testimony is rejected, however, the ALJ must explicitly state the basis for

doing so with sufficient particularity to enable a reviewing court to

determine whether those reasons for disbelief were legitimate, and

whether the determination is supported by substantial evidence.  *Martone*,

70 F. Supp.2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial

evidence, the decision to discount subjective testimony may not be

disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human*

*Servs. of U.S.,* 728 F.2d 588, 591 (2d Cir. 1984).

In support of his argument regarding rejection of subjective

complaints, plaintiff points to testimony to the effect that that experiences

daily headaches.  *See*, *e.g.*, AT 39.  The fact that the plaintiff may suffer

from discomfort, in the form of headaches, however, does not automatically qualify him as disabled, since "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). In any event, it is clear that the ALJ properly discounted plaintiff's headaches as suggestive of a finding of disability. Notably, when asked by the ALJ during the hearing why he was unable to work, plaintiff made no mention of his headaches as a contributing factor. *See* AT 33-34. Further indication of the relatively modest nature of the pain associated with his headaches is the fact that plaintiff is able to address them through the use of aspirin, and has made no mention of them to Dr. Silverberg. *See* AT 39.

In further support of this point, plaintiff advances the adverse side effects associated with this medication, as resulting in fatigue – another factor not mentioned by the plaintiff when asked by the ALJ why he was unable to work. AT 33-34. Although Dr. Silverberg's notes suggest the existence of a condition, associated with the side effects of the medication prescribed to control plaintiff's seizure disorder, which could cause the symptomology claimed, the ALJ's rejection of that testimony is properly explained and supported. While in an entry dated August, 1998, Dr.

Silverberg does allude to the side effects experienced by the plaintiff and described in his testimony, *see* AT 142, they were noted by Dr. Silverberg to be secondary to the prescription for Neurotin, with a further observation that once the dosage for that prescription drug was tapered the problem was "much improved". *Id.* By December of 1998 the Neurotin, to which the fatigue was attributed, had been discontinued altogether. AT 135. Treatment notes from a visit to one of his physicians on August 31, 1998 reflect that plaintiff was "feeling fine [–] no problems[,] really doing much better in all aspects. Energy [increased.]" AT 142. On November 3, 1998 Dr. Silverberg described to plaintiffs' seizures as under good control and that he was "doing well" with respect to "medication intolerance." AT 141. Later progress notes make no mention whatsoever of complaints of fatigue or sleepiness. *See*, *e.g.*, AT 138-39, 185-87. The only other indication of the problems associated with the drugs comes in the October 18, 2000 letter when, without giving any description, Dr. Silverberg references "the sedating side effects from his medications." AT 193. On this basis the rejection of plaintiff's subjective complaints regarding chronic fatigue was properly explained, and is well supported.[10]

_____

[10]     On the question of plaintiff's credibility I note that he has given conflicting statements regarding his ability to sleep. During the hearing, plaintiff testified that he

In sum, based upon plaintiff's failure to mention his headaches and fatigue when asked why he was unable to work, his daily activities, which include daily trips to the coffee shop for socialization with friends, and plaintiff's medical records, which are lacking in entries relating to symptoms, I find that the ALJ properly rejected plaintiff's subjective complaints as giving rise to limitations upon his ability to perform his past relevant work.

### 4.   Listing Equivalence

In his brief, plaintiff maintains that the ALJ should have found that his seizure disorder medically equals section 11.02 of the listings of presumptively disabling conditions.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  That listing, which addresses convulsive epilepsy (grand mall or psychomotor), requires

> Document[ation of] detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. [With:]
>
> A. Daytime episodes (loss of consciousness and convulsive seizures) or

---

has "[q]uite a bit" of difficulty sleeping.  AT 40.  Plaintiff apparently reported to Dr. Payne, however, that he sleeps well.  AT 195.

>B.  Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02.  Acknowledging that his seizure disorder does not meet this listing, plaintiff argues that it should be deemed to equal this presumptively disabling listing.

"For a claimant to qualify for benefits by showing that his [or her] unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he [or she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 891 (1990) (citing 20 C.F.R. § 416.926(a)) (emphasis in original).  "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his [or her] unlisted impairment or combination of impairments is as severe as that of a listed impairment.  *Zebley*, 493 U.S. at 531, 110 S. Ct. at 892 (citation omitted).

Despite advancing this argument, the plaintiff has been unable to point to medical evidence suggestive of the equivalency now urged.  Plaintiff experienced only one seizure during the entire period at issue, and has failed to demonstrate how any cognitive limitations and the chronic headaches allegedly suffered constitute medical findings

equivalent to those required under the listing.  Moreover, Dr. Richard

Blaber, a state agency medical consultant who reviewed plaintiff's

records, has rendered an opinion that plaintiff did not medically meet or

equal any of the listings.  *See* AT 51.  Such agency consultants are

properly designated by the Commissioner to determine medical

equivalence, *see* 20 C.F.R. §§ 404.1526(b), 416.926(b), and their

opinions in that regard can constitute substantial evidence of

nonequivalence.  *E.g.*, *Buck v. Barnhart*, 238 F.Supp.2d 1255, 1268 (D.

Kan. 2002).

In sum, the ALJ's determination that plaintiff had not carried his

burden of demonstrating medical equivalence to section 11.02 of the

listings is supported by substantial evidence.

### 5.   New Evidence

In further support of his challenge, plaintiff urges the court to

consider evidence generated after the date of the hearing in this matter

but presented to the Appeals Council for consideration.

The Social Security regulations expressly authorize a claimant to

submit new and material evidence to the Appeals Council when

requesting review of an ALJ's decision.  20 C.F.R. §§ 404.970(b),

416.1470(b); *Perez*, 77 F.3d at 44.  Even when the Appeals Council declines to review the ALJ's decision, however, the new evidence submitted by the claimant still becomes part of the administrative record – the regulations require the Appeals Council to "evaluate the entire record including the new and material evidence submitted . . . [and] review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. §§ 404.970(b), 416.1470(b); *Perez*, 77 F.3d at 45 (quoting § 404.970(b)).  When the Appeals Council denies review after considering new evidence, then, the Commissioner's final decision "necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence."  *Perez*, 77 F.3d at 45 (citation and internal quotation marks omitted).

There are limitations on these rules, however – the evidence must be new and material and must relate to the period on or before the ALJ's decision.  20 C.F.R. §§ 404.970(b), 416.1470(b); *Perez*, 77 F.3d at 44.  Specifically, evidence is "new" if it is not merely cumulative of what is already in the record, and is "material" if it is both 1) relevant to the claimant's condition during the time period for which benefits have been

-30-

denied – that is, the period on or before the ALJ's decision, and 2)

probative – in other words, that there is a "reasonable probability that the

new evidence would have influenced the Commissioner to decide the

claimant's application differently."  *Webb v. Apfel*, No. 98-CV-791, 2000

WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan*, 949

F.2d 57, 60 (2d Cir.1990)).

The new materials now offered, in the form of progress notes from

Dr. Silverberg and a letter dated May 1, 2001 from Dr. Soule, are neither

relevant to plaintiff's condition at the pertinent times nor helpful to his

cause.[11]  Dr. Soule's letter reports only partial complex seizures and

auras, the last occurring in January, 2001, experienced by Danforth, and

not only reflects that plaintiff's seizures are well controlled but indeed was

apparently authored to support his request for reinstatement of his driver's

license "as someone who is safe to drive."  AT 239.  Nothing contained

within any of these records casts doubt upon the ALJ's finding of no

disability.

IV.   SUMMARY AND RECOMMENDATION

---

[11]     Progress notes generated by Dr. Silverberg after the date of the ALJ's decision uniformly reflect that plaintiff's seizure disorder has stabilized, and that Danforth reports "feeling wonderful".  *See*, *e.g.*, AT 233-35.

By all accounts the plaintiff, while suffering from a seizure disorder, has been able to control his condition through medication, and experiences only an occasional aura indicating to him that a seizure will occur, his last actual reported and medically documented full seizure having occurred in January of 2000.  Indeed, one of plaintiff's treating physicians, Dr. Thomas Soule, has suggested that he is capable of driving and urged that his driver's license be restored, and the evidence in the record reflects that plaintiff himself considers that he is capable of working, and has actively sought employment.  Under the circumstances the Commissioner's determination that the plaintiff is capable of performing his past relevant work as an identification checker/floor worker is supported by substantial evidence, and resulted from the application of proper legal principles.  Accordingly, it is hereby

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties may file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of

this Report and Recommendation upon the parties by regular mail.

Dated:      January 13, 2006
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\socialsecurity\danforth.wpd

-33-